# IN THE COURT OF APPEALS OF IOWA

No. 22-0077
Filed April 27, 2022

**IN THE INTEREST OF P.S.,**
**Minor Child,**

**P.F., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

A father appeals the permanency order establishing a guardianship for his child. **AFFIRMED.**

Joseph G. Martin, Cedar Falls, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Nina Forcier, Waterloo, attorney and guardian ad litem for minor child.

Considered by May, P.J., Badding, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**GAMBLE, Senior Judge.**

A father appeals a permanency order that established a guardianship for his son, P.S., rather than placing P.S. in his care.[1] We affirm.

**I. Background Facts and Prior Proceedings**

This case began in October 2020 when P.S. was living with his maternal grandmother. P.S. was removed from her home due to concerns about her ability to care for him given her health conditions and mobility limitations. The juvenile court confirmed P.S.'s removal from the grandmother's care and both parents' legal custody. In December, the juvenile court then adjudicated P.S. as a child in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) (2020), and placed custody of P.S. with the Iowa Department of Human Services (DHS).[2]

Meanwhile, the father lived in Cincinnati, Ohio. At the end of December, the father made contact with a caseworker and requested a visit with P.S. The father attended a visit the next day, however he did not stay for the entire visit and left after about an hour. When a case worker inquired with the father regarding whether he had any criminal history, "he got upset and reported that it is [the worker's] job to figure that out and that his is not talking about it," though he acknowledged "everyone makes mistakes." A summary of the father's criminal convictions in the City of Cincinnati and County of Hamilton (in Ohio) show the father has been convicted of ten felonies and twelve misdemeanors, though the most recent conviction stems from a 2004 arrest. However, he also was convicted of misdemeanor theft and disorderly conduct in Iowa in 2016.

---

[1] The mother does not appeal.
[2] Not long after, P.S.'s grandmother passed away following an accidental fall.

The father did begin visiting Iowa for in-person visits with P.S. and Zoom visits. At times, the father could not manage his visitation schedule without prompting by a caseworker, and P.S.'s behavior regressed following an overnight visit with the father. But the father's timeliness and communication improved.

The Ohio Department of Job and Family Services completed an initial home assessment of the father's home where the father lives with his two cousins. The resulting report indicated the home was safe for a child and recommended approval of placement in the father's home. The report also described the home as "a transitional place to provide support to extended family members as needed." However, P.S.'s counselor recommended that P.S. not be placed with father given the limited number of visits between the father and P.S.

The juvenile court held a permanency hearing in October 2021. The father requested P.S. be placed in his care. DHS requested the court instead establish a guardianship with the maternal aunt with whom P.S. had been placed. The court determined P.S. could not be returned to either parent's custody and found that DHS had made reasonable efforts toward reunification. However the court determined termination of the parents' rights would not be in P.S.'s best interest. So the court elected to establish a guardianship with a maternal aunt in accordance with Iowa Code section 232.104(2)(d).

The father appeals claiming P.S. should have been placed in his care.

## II. Scope and Standard of Review

We review the father's claim de novo, while giving weight to the juvenile court's factual findings. *See In re A.A.G.*, 708 N.W.2d 85, 90 (Iowa Ct. App. 2005).

Our ultimate guidepost is the child's best interest.  *See In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006).

**III. Discussion**

Following a permanency hearing, the juvenile court may enter a permanency order "[t]ransfer[ing] guardianship and custody of [a] child to a suitable person."  Iowa Code § 232.104(2)(d)(1).  Before doing so,

> convincing evidence must exist showing that all of the following apply:
> a. A termination of the parent-child relationship would not be in the best interest of the child.
> b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.
> c. The child cannot be returned to the child's home.

*Id.* § 232.104(4).  All of these elements are met, so the juvenile court was free to establish a guardianship.[3]

But the father argues the juvenile court failed to adequately consider his parental preference.  *See In re L.Y.*, 968 N.W.2d 882, 895 (Iowa 2022) (recognizing a parental preference in a chapter 232D guardianship even though it is no longer codified).  Certainly there is a parental preference, but it is rebuttable, and we are ultimately guided by consideration of P.S.'s best interest.  *See In re L.H.*, No. 20-1144, 2021 WL 211136, at *2 (Iowa Ct. App. Jan. 21, 2021) (collecting cases); *see also In re Guardianship of Stewart*, 369 N.W.2d 820, 823 (Iowa 1985) (recognizing the parental preference is rebuttable and that "a parent who has taken 'an extended holiday from the responsibilities of parenthood' may not take

---

[3] We note the child did not share a home with either parent and was instead living with his maternal grandmother at the time of removal, but she has since passed away.

advantage of the parental preference for custody" (citation omitted)). Considering P.S.'s best interest, we conclude the parental preference is rebutted and agree with the juvenile court that P.S.'s interest is best served through a guardianship instead of placement with the father.

Like the juvenile court, we note the father and P.S. have had a limited relationship given the father's physical distance from P.S. and limited number of visitations between them. *Cf. In re Guardianship of B.B.*, No. 21-0992, 2022 WL 523325, at *4 (Iowa Ct. App. Feb. 22, 2022) (considering a parent's minimal contact with the child when considering whether a guardianship should be established under section 232D.204). While he has progressed in visitation, the father has never been a continuing presence in the child's life and has not demonstrated an ability to independently care for his needs. And we are troubled by the father's lack of candor, his reluctance to disclose his criminal history to a care provider, his defensiveness, and his pervasive use of aliases. The father has an extensive criminal history including a misdemeanor theft conviction as recently as 2016. *Cf. In re A.E.*, No. 01-1259, 2002 WL 663770, at *3 (Iowa Ct. App. Apr. 24, 2002) (considering a parent's proclivity for criminality when making a best-interest determination). And the father works as an over-the-road trucker, making us question whether the father could provide P.S. the level of care and attention a young child requires.[4] While the Ohio home study approved the father's home for placement, the report described the house as "a transitional place" for family members to use. P.S. requires stability and continuity of care, which would not be

---

[4] The father did testify that he would change his routes to local routes.

served living in a home that effectively serves as a family boarding house. Moreover, the father lives multiple states away from P.S.'s existing core community. Therefore, we conclude placement with the father does not serve P.S.'s best interest.

Instead, P.S.'s interest is best served through a guardianship with his maternal aunt. The child is five years old. He is developmentally delayed. He has strong bonds with his maternal aunts and will be able to remain close to his older half-siblings who are also placed with maternal family members. This continuity of support is crucial for P.S. And he will be able to continue his academic progress by staying in the same school system while in a guardianship with the maternal aunt.

We remind all involved that while the guardianship is in place, the father and P.S. can grow their relationship and P.S. can become acquainted with his extended paternal family. In the future, the father may challenge the guardianship and seek placement of P.S. in his care. *See In re R.S.R.*, No. 10-1858, 2011 WL 441680, at *4 (Iowa Ct. App. Feb. 9, 2011). Additionally, as long as the CINA case remains open, the juvenile court will "retain jurisdiction and annually review the order to ascertain whether the best interest of [P.S]. is being served."[5] Iowa Code § 232.104(8)(a). So P.S.'s best interest will remain at the forefront, and the court

---

[5] Alternatively, "the court may close the [CINA] case and may appoint a guardian pursuant to chapter 232D." Iowa Code § 232.104(8)(b). In the future, should the court elect to close the CINA case and appoint a guardian pursuant to chapter 232D, if the father wanted to petition for termination then, Iowa Code section 232D.503 would govern that process.

can take action as needed to ensure P.S.'s needs are being met whatever placement that requires.

**AFFIRMED.**